I'd first like to take the opportunity to apologize to Reliance's counsel, Mr. Donsbach. We filed supplemental authorities, I believe it was two pages, on April 13th and inadvertently did not send him a copy. He called, I believe, last Tuesday and we sent one, sent one, a copy to him immediately. So I apologize for that error on our part. But counsel did get them, does have the authorities? Yes, Your Honor, we do. We have no objection or issue with the matter. Well, thank you. Thank you, Your Honor. I just wanted to make that part of the recommendation. Well, I'm always glad to see when counsel work out these little errors that do happen when they're amicable. Sorry about that. Thank you. Today, at the matter at hand, we respectfully request the reversal of rulings by the District Court. First, the order dismissing the counterclaim for set-off, which was filed on June 17th, 2003, which is under review de novo. Secondly, the order denying the motion for summary judgment, which was filed on September 25th, 2003, which is also being reviewed de novo. And thirdly, the order denying the motion for reconsideration, which was filed on October 9th, 2003, which is under review, standard review of the visa discretion. I'd first like to address the counterclaim for set-off and dismissal. I have a question on your set-off claims. Are any of these, some of these are not litigated charges? Some were litigated and were past litigated charges. Well, there was sort of malpractice. It wasn't really clear to me whether, I mean, was there an actual judgment? There was an actual settlement, Judge Callahan. There was a settlement of the underlying action of which TDC believes that it paid over its policy limits in light of the liquidation of reliance, and therefore it submitted a proof of claim with the liquidator in Pennsylvania to that effect, as well as in our counterclaim. It was about the same time that this litigation was ongoing in the federal court that the other case, which was, I believe, the DeMoss case. All right. So you said it was a settlement, and then they submitted something to the liquidator, but had that been determined with the liquidator? No, Your Honor, not yet. So it really wasn't finally determined then? No. In terms of, I guess, the validity of the claim, it has not been determined by the Pennsylvania liquidator, to my knowledge. All right. So then if this were allowed to go forward, why then wouldn't we just be giving TDC priority over all the other people that have claims? Because I think, Your Honor, we have to look at the regulatory scheme and whether or not this set off, which is mandated by Pennsylvania law, as well as Hawaii law, and I think Judge Gilmore indicated that Hawaii law applied, but regardless of that, both statutes are exactly the same, which mandate set off in both jurisdictions. And I think, Your Honor, there's not a priority given. I mean, it still has to be submitted. If there's a judgment or a claim that is valid, it still has to be submitted to the Pennsylvania liquidator. However, what we were asking in our counterclaim was basically, as stated in Quackenbush, sort of a defense to liability. We're not asserting an affirmative claim. All we're saying is, look, if you owe us more than we owe you, we just want to set off from the debt that you owe us. And there are various reinsurance contracts and other contracts in other jurisdictions, as well as Hawaii in the Mau case, which were then submitted to the Pennsylvania liquidator as a proof of claim in December of 2003. Would it be easier for us to answer this question, though, if these had already been determined, say, if you already had judgments and those were already? I think for the trial court, it would be easier. But I believe that we have the burden of proof in showing the validity at the trial level, as a matter of fact. So in proceeding with our counterclaim and showing the evidence to the trial court, I believe, yes, TDC has the burden in showing the validity of the various amounts that may cumulatively be added to the set off and may be set off from. This particular judgment, if the judgment is upheld in the $2 million that Judge Gilmour awarded to Reliance. I have another question. Why didn't you waive your rights to object to the apportionment of damages by failing to raise the issue at the settlement? I believe, Judge Nelson, you're asking me about waiving the doctor's rights to settle the case. First of all, TDC was not a party to that particular case. That's not required. Not a party to the lawsuit. I mean, they were there at the settlement and was part of the release document. And, of course, they had to pay into the settlement in order for the case to settle and the stipulation for dismissal with credit issue. I'm sorry. I didn't hear your answer because you said not. And TDC was a party to the Well, they were there. They were a party to the settlement. They weren't a party to the lawsuit. Attorney Peter Char represented Straub in the lawsuit. Apparently, during the time. But they were clearly privity with people that were parties to the lawsuit. Yes. They funded the thing. They funded the thing. And that was their duty. They had a duty to them. In Hawaii, privity is not required for preclusion, right? I don't understand. I'm sorry. You don't have to have neutrality as required. You don't have to have been a party so long as you stand in privity to a party. But I don't think TDC was in any position to waive any of the rights of Dr. Skubota and Dr. Pierce. Once they became defendants in the case, they were entitled and we were under a duty to defend these two doctors with separate counsel. Because at that point, there terms of settling. Obviously, everybody wanted the case to settle. It was just a matter of how much and who was going to pay. So, I don't believe that TDC had any standing or any right to settle anything on behalf of the doctors. And I don't believe they did so. Well, can you point to me any place in the record at all that indicates you preserved your right to litigate the issue of apportionment of liability among the tort feasors? Is there anything in the record? With the exception of the statute, Your Honor, with regards to joint tort fees or liability, no. I believe that in terms of looking at the legal liability of any of the defendants at the moment of settlement, and there are critical times during 1999 where you have to look at whether or not there is a duty to indemnify on behalf of TDC at that critical time. The first critical time was in June of 1999 during the mediation, at which time only Straub was a defendant. Straub now was in there because of the vicarious liability of his doctors and his agents. Peter Char, the attorney for Straub, and there are numerous report letters to TDC about the evidence in the underlying case, indicated that Dr. Earl Kubota was the guy that was going to pay big time, that he was the guy that was going to pay big time. Well, except for once a settlement happens. Now, I know you put in some declarations in the summary judgment or whatever about proportional liability, but one thing that's really bizarre about this case is when everything that we have to decide over this settlement, and no one has a settlement in the record. I can't help but say that I wonder if someone's trying to hide the ball here in terms of, and I'm not sure, obviously neither of you want us to see the settlement, but anyway, all we have to deal with is what the district court had, right? And what the district court had was the reconstructed settlement, which my understanding is, I think the individual named Hoffman, it was pretty, it was undisputed as to that's what. But, Your Honor, in our motion for reconsideration, what's significant here is when we filed our motion for summary judgment, which I believe was on November 25, 2002, Reliance filed their partial summary judgment on January 2003. The district court did not rule on our summary judgment motion until September 25, 2003. That's 10 months later. So we are busily doing discovery during this period of time. All right, but what we have to look at here is what was the evidence that the district court considered in summary judgment? And if there's other evidence out there, so be it. But we can't do it on ourselves. Unfortunately, there are two missing pieces of evidence. One is... Well, I don't even want to know what it is because I can't consider it. But the district court looked at basically the release document and Mr. Hoffman's declaration. All right, but what else? We in our motion for reconsideration submitted Mr. York's document, which we believe refutes Mr. Hoffman's document, but she disregarded that. And that's her discretion she did that. If you look at the face of the... And what specifically in there refuted it? He determined that there was... He refuted the various facts that Mr. Hoffman indicated that were stipulated on the record. And unfortunately, we do not have the tape of the state court's settlement. We tried to get it. We found out it was missing. And that's in the record. It's a missing tape. There was no real-time record of the settlement. So our position and TDC's position is you need to look at the face of the release. If that's the only document... If you're going to have Reliance's attorney saying one thing, TDC's attorney saying another thing, then you have to look at the release document because that's all you have. And looking at the release document, there's a blanket denial of liability. And the doctors are not part of that release document. They are not. They were dismissed weeks before that release document was executed and weeks before the stipulation for dismissal with prejudice was executed as to Straub and the plaintiffs. They were not part of that final stipulation for dismissal with prejudice. They were brought in because Reliance wanted to force coverage, force TDC to look at coverage from a different angle. And it is undisputed in the record that it was settled for a certain amount, that 4.3 and that TDC put in a million. Correct. On behalf of Straub in... Well, that TDC put in a million and that Reliance put in the rest. Correct. And it's undisputed in the record that Reliance said that they retained rights to go after TDC. Correct. So what were they going after if... There was a differing opinion on coverage. And in a perfect world, what would have happened is that action probably would have stayed and the insurance companies would have ran over to federal court and had a deck action on the issue of coverage. But what happened is that Reliance decided to pay it and then sue TDC later on after they settled the case. Well, and why didn't they retain that in their settlement? Unfortunately, Your Honor, Reliance indicates through the declaration of Mr. Hoffman that they reserved their right. I don't think we dispute that they reserved their right. It seems to be undisputed in the record. Right. But that doesn't necessarily mean there's legal liability on the part of the doctors or strop. There was only negligence. If you look, you have to look at the evidence that was going to in the underlying action as to who was legally liable in that regard. I'm sorry. Isn't there a presumption that they are equally culpable? If you went to trial, if you went to trial and then there was a judgment and there was negligence... I'm sorry. Where does that limitation that you have to have gone to trial... No, I'm just giving you a hypothetical, I guess, just in case it's okay. No, no. I understand. If you go to trial and you have an adjudication, then... But of course, if you have an adjudication, the jury would apportion... Apportion fault. Correct. You don't need the presumption at that point. Correct. But isn't there a statute of presumption that joint tort fees are equally culpable? There would be joint and several liability if there's culpability on all the parties. There would be joint and several liability. And that they're equally. Equally. Equally. Right. Or proportional fault. If you go to trial and you get an adjudication to the contrary, then you overcome the presumption. Correct. But here you've got a settlement. You don't have any way of overcoming the presumption. How can you overcome this statute of presumption? Because as an insurance company, when you're insured, you have a duty to look at the evidence and to look at the culpability of your insurance. You have to make a reasonable determination of who is going to be at fault, proportional or not. And in determining coverage, you need to look at whether or not those insurers will probably or reasonably be apportioned fault at the end of the day. I'm sorry. I don't think... There was settlement, right? Correct. The doctors were part of the settlement. Correct. The settlement didn't say, didn't apportion fault and say, Dr. A was 90 percent liable. Dr. B was 10 percent liable. There was nothing like that. Well, I have to bet you're correct. I have to back up a little bit. Well, let me finish my question. Let me just get it on my check because everything I've said is true up to now. Yes. So, so you have a settlement. You've got no apportionment of fault in the settlement itself. So the parties negotiate and they don't come up with an apportionment. And then you've got a statute that says everybody's presumed to be, joint court fees are presumed to be equally culpable. How do you overcome that? How can you possibly overcome that in the case of a settlement? You've settled a claim. You didn't apportion. You never get to a judgment because you settled a claim. So you never get to a jury to determine a different. How, it seems to me you can't overcome the presumption. You're stuck with a presumption. That's the beauty of a settlement. There is a denial of liability by all the parties. And that's why you want to settle it. You don't take the risk of going to trial and getting no fault. I do understand about settlements. But what you do at that point is you deny yourself the one mechanism the law provides for overcoming a presumption. That is to go to a jury and have a jury say liabilities apportioned in a different way. You have settled away the right to adjudicate a different apportionment. You didn't even I mean maybe it's possible that you included an apportionment in the settlement that way. But I'm not sure it would be. But it's it's it's possible. And that'd be something we could talk about. But this settlement didn't have an apportionment. It didn't have an apportionment, Your Honor. But you still have to look at your duties as an insurance company under the policy and looking at the reasonableness of the evidence. Why isn't the state statute enough? The statute says presumptively they're equally liable. Bam. End of story. The legislature of the great state of Hawaii has has thought about this and has given us a rule of law to apply. And the rule of law applies. Sure, if you go to trial, the presumptions overcome because you've done had a trial. You know, you've had a chance to to, you know, put on your evidence and the jury's looked at it. You know, you know, you go through the whole due process thing. Then then you come up with a different number. But I respectfully disagree in terms of that statute being being a prima facie determination of liability. You have to look. It has to be a presumption of culpability. I mean, culpability. It has to be a rebuttable presumption because you have to look at the actual evidence that you're looking at. I don't think I don't think we're disagreeing on this point. I agree that it's rebuttable. I'm just suggesting there's only one way to rebut it. And the way to rebut it is you go to trial. If you want to overcome the presumption, you have to go through the difficult process of actually proving a case with your having a jury come out and give a different number. And then then the presumptions overcome. I agree with that analysis, but there has to be or you could have retained the right to litigate that in the settlement agreement. Right. We could have. Yes. And that was not. Well, we maybe that would have worked, but then we'd have some at least if you'd done that, we'd have something to talk about. Well, I mean, we I mean, there was obviously Mr. Hoffman indicated that they're reserving their rights, reliance, reserving their rights to go against TTC, TTC fully anticipated reliance would follow up on its on its statements. And and we'd be back in court similar to a declaratory relief action on the other side. I mean, I asked one question on another subject on Burford extension abstention. You claim Burford extension was inappropriate here because you were claiming money damages. But what you're really claiming is an equitable remedy. You're really asking for a set up. Why are you not? Yes, we are. And I think, you know, if you look at it and then why would Burford abstention be inappropriate? Well, I think this is an action for damages because what what TTC is asking for is evaluation of what's owed under various reinsurance and various contracts that reliance owes TTC. So it is an action in damages. It's an analysis of what is owed to us globally and not just here in Hawaii in terms of the set up. It doesn't include just the mall case, which is the seven hundred thousand dollars that we allege in the country. We also assert in the counterclaim that there are other contracts which we intend to seek a set off from because you're taking set up, which is an equitable remedy and not an accident law, which would make Burford abstention quite appropriate. I understand the history of equity, and I think that's where Judge Gilmour was coming from in analyzing the equity of a set off claim. However, I think under Quackenbush, we are right on course in terms of asserting an action for damages because it is a breach of various reinsurance and other contracts that TTC has with reliance. Let me ask you this. If it's an action in equity and abuse of discretion is the standard, can you climb up that hill or do you have to make it a legal action? I think under Burford, we have to make it an action in law. Because if it's an abuse of discretion, you can't win here, right? Yes, I will concede that. But again, you know, we have contracts with reliance and, you know, we're ready to go forward on the counterclaim to show the trial court. You're out of time. We've taken up quite a bit of your time with this question, so we'll give you a couple of minutes for a bottle if you choose to take it. Just one point, Your Honor, on equitable contribution. Now I'm going to have to charge you for ten minutes. Okay. On the cross appeal, we believe the cases are pretty straightforward. There's no common liability between a primary and excess. Thank you, Your Honor. Okay, we'll hear from the opposing counsel. Good morning. May it please the court. My name is Paul Donsbach, I represent Reliance Insurance Company and Liquidation. And with me today is co-counsel Mason Martin. We'd like to address the abstention issue first. All of the legal authorities on abstention boil down to two considerations, and those are efficiency and fairness. There's no dispute here, no legitimate dispute, that it's more efficient to have TDC's claims against Reliance heard in the liquidation. The liquidation was created for the very purpose of hearing claims against Reliance in an efficient manner that does not waste Reliance's assets on litigation costs. There is an administrative procedure, rather than litigation, to do that much more efficiently in the liquidation. What about fairness, though? I mean, you got two million from them, right? And you already, well, they had put, and they had already put in a million, right? So that's everything they would have had to pay under the policy, correct? The most that TDC could have paid is three million, right? Your Honor is correct. So, and then if they owe you, if you owe them other money, why should you get to have the whole two million? The fairness goes to, and this relates to the abstention, the district court's abstention order was correct and was within its discretion, because if TDC believes that it has a priority position under the set-off statute as to this two million, let it make that argument in the liquidation. And in fact, it has. It has submitted these claims in the liquidation, and therefore not only Burford abstention is appropriate, but Colorado River abstention as well. It can go into the liquidation court and make the same arguments that it's making here. If it thinks that it has a constructive trust over that two million, that it should have a priority position, the Pennsylvania court can deal with that. There are obviously two prongs to the Burford abstention, and that consideration makes it appropriate not only under the second prong, but the first prong as well. The first prong relates to whether there's an overriding state or a difficult issue of state law. Obviously, there is a dispute about the interpretation of the set-off statute, and we believe the Pennsylvania law would control here. And the Pennsylvania commonwealth court would be able to... I'm sorry, what's the dispute, whether it's mandatory or not? Number one, that it applies, whether there would be a dispute whether it applies to this two million. Reliance's position is that it doesn't, but and obviously TDC disagrees. Is it a legal matter or is it a factual matter? I believe that there's an issue of interpretation with respect to the statute. How do you interpret the statute? And in the context of the liquidation order that says that no set-off is available, the Pennsylvania commonwealth court, we believe, has expressed a state... That's not a question of interpreting the statute. I mean, that's a question of interpreting the order. What we believe is both, but either way... The statute is quite clear. One of the issues with respect to the interpreting the statute and the courts have grappled with this is whether it's a mandatory issue or not. The O'Connor case, which is one of the cases that TDC principally relies on, says that this statutory set-off remedy is not mandatory. And in fact, it's discretionary. So if that's the case, then that's the case from Northern District of Illinois. That's correct. Interpreting the Illinois statute. That's correct. That was the same, same statute. The same, the same wording. Uniform liquidation act. The Pennsylvania statute is modeled on a uniform statute. And I believe that essentially the same language, same statutory language was at issue in O'Connor as in this case. So the Pennsylvania commonwealth court will be in a much better position to decide this issue. There's no reason to reverse the district court's abstention order here in order to have these issues litigated in the Hawaii district court. The Pennsylvania court will be in a much better position to rule on that. And more importantly, to do so in a consistent manner. To the extent these issues are arising in other courts, in other cases, excuse me, there is a need to interpret this statute and the liquidation order in a consistent manner. And you think the proper mode of abstention is dismissal rather than a stay? Yes, Your Honor. A stay would be a moot point, given that there is a liquidation process that is going to wind up Reliances Affairs. A stay might be an appropriate remedy where you have a situation where. Why wouldn't a stay work? You go to Pennsylvania, figure out what the value of the claim is, and then you set it off in this proceeding. Oh, once once once I mean, it would accomplish all the. What possible objection would you have to that? I don't know that we would phrase it in terms of an objection. I think the more efficient resolution here, which is the one that the district court, we believe, had discretion to make was to make it in the form of a dismissal, recognizing that when the liquidation ends, that's going to be the end of the trail. But I do understand Your Honor's point that a stay de facto would accomplish the same thing, because this case, TDC's counterclaims in this case would be stay while the liquidation goes forward. So I think either way you go, you get to the same result. We just think that the dismissal is an appropriate way. I mean, the practical difference of a stay is that on the main claim, they wouldn't have to make payment until the matter was resolved over there. So now they're not they're not they're not setting throwing money into the liquidation. Understood. They might then get back. Might not get back. That would be the practical difference. And I suppose reliance arguably would be protected because there is post judgment interest, we believe, accruing. However, we just think that the district court's decision to abstain and to do so through the means of a dismissal is the most practical and effective remedy. Well, but like Judge Kaczynski's saying, if they have to pay you the two million, then even though eventually maybe they're it's they're supposed to get some money, they're not going to get it. They're not going to get the value of the set off because that two million is going to go elsewhere in the liquidation proceedings. Right. As I understand TDC's argument, they're they're effectively saying that they have a constructive trust on that two million. So they can go to the Pennsylvania Commonwealth Court and make that argument that because of this statutory set off remedy, that they should have a priority position as to that two million. So it doesn't matter whether the two million stays in TDC's hands in the court here or or goes into the liquidation. If that two million is still if it doesn't matter to you, I'm sure it matters to them. They'd be happy to hold on to the two million if you really said that. I think we have a settlement in the works right here because I think they care. Point well taken. The liquid. I don't care if I, you know, if I sort of start taking money out of my pocket and hoping to get it back. In a sense, the liquidator is acting on behalf of creditors and does have a duty to go out into the world and collect the amounts that it believes are owed to it. So we certainly do want to take the two million. My point is that whether it goes into the liquidation or is dealt with through some other mechanism, TDC is one of those things that theoretically it's no different. But as a practical matter, it's making a difference. Exactly. So there is there's no prejudice to TDC. You want to address the main point? Certainly, your honor. We believe that I have a question about that. Obviously, I stated I would. It was it's a little disturbing that no one could really come up with a settlement. But, you know, all that aside, well, we have to deal with what we have to deal with. But obviously, your client would be very there was what, three million dollars in primary coverage with the doctor, the two doctors in the hospital. And then you had the excess coverage of twenty five million. Right. That's correct. So essentially you were exposed for twenty five million. And this guy's a paraplegic. So settling for four point three million, that that's a good thing in terms of their because a paraplegic that I mean, I've seen things go for a lot more money than four point three million. I don't know what it was, but that sounds like everyone got a pretty good deal. Why isn't this a global settlement with OK, we want to get the plaintiff out of here because four point three is a good amount. But as insurers, we can't agree how we're going to you know, how we're going to pay it. And TDC was dragging their feet and said, well, I'm only putting in a million now. And Reliance said, well, we're going to reserve our rights to go after you. And then we'll find out how the rest of how the rest of that's going to be apportioned. Well, on the summary judgment, you just got the whole amount that you could have gotten. Right. So what were you going to fight about? If you weren't going to fight about proportional responsibility when the excess coverage came in to play, what were you going to fight about? The dispute was about how many limits were triggered. TDC's position was there was only one limit, that this was only a claim against the hospital, because the hospital at an earlier point in the underlying litigation was the only party defendant. So TDC's position throughout the underlying litigation was we're only on the summary judgment by them having to pay you what they what the court ordered them to pay you. They essentially had to pay the million on each of them. Right. That's correct. OK, so they never could have had to pay more than that, right? Not unless there was a bad faith claim, which we we had actually at one point advanced that, but it was withdrawn. So your Honor is correct. It's just the three million. But from our perspective, you were reserving the right to fight with them about something, but it's essentially got the whole pie. And so what were wasn't there something disputed in there if it wasn't the proportional? Your Honor, and this is the key point that the dispute was about interpretation of TDC's insurance policy, the way TDC interpreted it. The insurers had to actually be parties to a litigation to be named as defendants in order for TDC's separate limits of coverage to be available. So if we resolve that issue in your favor, then they waived, then it's your position that they waived the ability to bring up anything about proportional fault? That's correct, because by participating in the settlement, consenting to the settlement, TDC for forgoes the opportunity to make that argument that there are defenses to liability. And that's exactly what its position is in this appeal, and we disagree. We believe it waived it. In addition to that, not only did they waive it at the time of settlement, but in the summary judgment motions, TDC again waived that issue. Reliance in its summary judgment papers presented evidence of fault of the two physicians and the hospital, and that evidence was not controverted. So TDC again, in the summary judgment proceedings, failed and waived its argument that there might be a different allocation with respect to the physicians. And Ms. Lindio alluded to a declaration of Mr. York, who was TDC's coverage counsel in the underlying case. I think it's important to point out that that was submitted only in the motion for reconsideration by TDC. That was not part of the record on summary judgment. And the district court, we believe, properly ruled that that was too late, that if that was going to be submitted in the summary judgment papers, that it had to be in TDC's opposition. It didn't do that, and it did not qualify under the standard for a motion for reconsideration. So in the summary judgment proceedings, the only evidence of what the settlement was, was the written agreement and then the declaration of Mr. Hoffman, who was Reliance's coverage counsel. And his declaration made clear that although we don't have the official record of the settlement in the state court, because apparently the court clerk didn't record it, there's a declaration to that effect in the record. We know from Mr. Hoffman's declaration what the terms of settlement were, and that that was that the doctors were parties to the case at the time of settlement, therefore eliminating any issue about that in interpreting TDC's insurance policy, that Reliance reserved its rights to pursue contribution, and that all parties agreed that the $4.3 million settlement was a reasonable amount, and they consented to that settlement. And there were no other issues preserved by TDC with respect to that settlement. Just briefly on the cross-appeal, we want to make clear that's only an issue if the court were to reverse on the contribution, excuse me, on the equitable segregation claim. And in that event, we would suggest that an alternative basis for affirming the district court's judgment is the alternative theory of recovery and contribution. The argument there that TDC makes is that because it's the primary insurer and Reliance is the excess, that the two insurance companies are not in the same layer of coverage, and that therefore there's no right to contribution. We've cited several cases where an excess insurer was able, when it paid more than its share of coverage, to come back and recoup that by means of contribution. TDC relies on some cases that we think are not applicable, where the courts have broadly said there's no right to contribution, the only remedy is equitable segregation as between a primary and excess. The distinction there, and the reason we believe those cases don't apply, is those are all cases where a primary intended that the excess carrier breached its duties to contribute to a settlement and sought to obtain those funds from the excess. And in that instance, the primary simply just needs to tender its limits, and there's no reason to allow a primary to obtain reimbursement from an excess insurer contribution. The circumstances here, we believe, are quite different. And the position that Reliance was in as an excess carrier was that, as the court here determined, the primary insurer breached its duty to pay the full amount of coverage available. The policyholder made demand on Reliance to make up the difference and pay more than its share of coverage, and Reliance did so under a reservation of rights. We think it's important, if the court were to reach this issue, to recognize that the full range of remedies should be available to an insurance company in that circumstance, to encourage it to go ahead and settle the claim and pay the disputed coverage amount and be able to then get reimbursement through contribution. So you're sort of making a public policy argument that that way plaintiffs can get out, move on, and let the insurance company spend their lawyers' money? Exactly. Fighting about it? And let the plaintiff get his or her money and move on? Exactly. In these circumstances, the insurance companies should be encouraged to just go ahead and pay the claim, settle it, make it go away, and then, in a separate proceeding, if necessary, litigate the coverage issues. And if you limit the remedy, as TDC suggests, to equitable segregation, there may be some defenses that are available there, in some situations, that are not available in a contribution claim. So you're potentially making insurers uncomfortable settling claims in this circumstance. But again, we believe... I know you're not conceding that they did, but could they have structured the settlement, in your mind, in a way that would have allowed them to retain their rights to argue, you know, proportional fault to the doctors and fight that out with you? Certainly. There were many different alternatives there. They could have apportioned the settlement in the written agreement, or TDC could have reserved the right to litigate the issue of apportionment in a future proceeding. They didn't do that. There was no reservation of rights by TDC. They simply consented to the settlement agreement, and the parties moved forward. All right. Thank you. Thank you. Very briefly, Your Honor, on two points. We did submit experts' reports with regards to the fault of Drs. Pierce and Rhonda Perry, and that is in the excerpts of Record 20-21. That was like the summary judgment, right? That was submitted as an expert report on November 20, 2002. Was that a part of the summary judgment? Yes, it was, Your Honor. Okay. So that's not part of the settlement? No. But what we're saying is we did submit evidence with regards to fault because we believe that that was an issue that was going to be before the district court. The second point, Your Honor, is when a district court takes 10 months in issuing a ruling on a summary judgment on a motion for reconsideration when new evidence is brought before the court, we believe it is an abuse of discretion not to consider the evidence as part of that motion for reconsideration. So those are our points. Thank you very much. Okay. Thank you. Cases are used and submitted. Let's hear argument in ADM Investors Services v. Vose v. Investors Equity Life Insurance Company. Okay. The lawyer has successfully negotiated for the company's shares. There's an extra chair over there if anybody needs it. Is he charging a rent? Yeah, he is. Does this affect the alignment of the parties?
judges: D.W. Nelson, Kozinski, Callahan